UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                                          Chapter 11
                                                                Case No.: 18-18833-MAM
OKANA, LLC,

          Debtor.
_____/

                                                                Jointly Administered
In re:                                                          Chapter 11
                                                                Case No.: 18-18834-MAM
SUNGLASS TRADER, INC.,

          Debtor.
_____/


**<u>DEBTORS' JOINT PLAN</u>**


Furr & Cohen, P.A.
*Attorneys for the Debtors*
Aaron A. Wernick, Esq.
2255 Glades Road, Suite 301E
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 fax
awernick@furrcohen.com

## TABLE OF CONTENTS

ARTICLE I Definitions ...................................................................................................................1

ARTICLE II Classification of Claims and Interests ......................................................................6

ARTICLE III Treatment of Claims and Interests Under the Plan ..................................................6

ARTICLE IV Impairment..............................................................................................................16

ARTICLE V Means of Execution and Security for Payments .....................................................16

ARTICLE VI Executory Contracts...............................................................................................17

ARTICLE VII Duties and Fees owed to the Office of the U.S. Trustee ......................................17

ARTICLE VIII Effect of Confirmation .......................................................................................17

ARTICLE IX Post-Confirmation Liquidated Debtor's Structure…………..... …………...……19

ARTICLE X "Cram Down", Modification, Substantive Consolidation.......................................20

ARTICLE XI Retention of Jurisdiction .......................................................................................21

ARTICLE XII Miscellaneous .......................................................................................................22

DEBTORS' JOINT PLAN

ARTICLE I
<u>DEFINITIONS</u>

For the purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article and, any term used in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code.

1.1    "Administrative Claim" shall mean a Claim against the estate of the Debtors allowed by order of the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a) of the Bankruptcy Code, or incurred by the Debtors in their ordinary course of business from July 20, 2018 to the Confirmation Date where such claim has been approved by the Court, and shall include all fees payable pursuant to Section 1930 of Title 28 of the United States Code.

1.2    "Allow", "Allowed", "Allowance" or words of similar meaning shall mean with respect to a Claim against the estate of the Debtors that is: (a) either (i) scheduled by the Debtors in their Schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed; or (ii) asserted in the Case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court; or (ii) that has otherwise been allowed by a Final Order or pursuant to this Plan that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed

Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of this Plan.

1.3    "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11 of the United States Code, which governs the Chapter 11 case of the Debtors.

1.4    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 cases of the Debtors or the United States District Court for the Southern District of Florida having jurisdiction over any part or all of the Chapter 11 cases of the Debtors in respect of which the reference has been withdrawn pursuant to Section 157(d) of Title 28 of the United States Code.

1.5    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

1.6    "Bank United" shall mean BankUnited, N.A.

1.7    "Bank United's Collateral" shall include all property listed in the UCC-1 recorded by Bank United against Sunglass Trader, bearing Filing No. 201504847294, which listed the following property: "All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles".

1.8    "Bank United Loan Documents" shall mean the Business Loan Agreement, Commercial Guaranty and Subordination Agreement executed and delivered by Sunglass Trader to Bank United in connection with Bank United's Promissory Note.

1.9    "Bank United Promissory Note" shall mean the Promissory Note entered between Sunglass Trader and Bank United on or about August 27, 2015 in the principal amount of Four Hundred Fifty Thousand Dollars ($450,000).

1.10    "Bank United State Court Action" shall mean the lawsuit filed by Bank United

against Sunglass Trader in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, bearing the case styled: *BankUnited, N.A. v. Sunglass Trader, Inc. and Gregory Sarkin*, Case No. 502017CA004606XXXXMB AH.

1.11    "Bank United's UCC" shall mean the UCC-1 Financing Statement filed by Bank United on or about August 28, 2015, in connection with the security interest granted by Sunglass Trader in Bank United's Collateral, bearing Filing No. 201504847294.

1.12    "Business Day" shall mean a day other than a Saturday, Sunday or legal holiday.

1.13    "Case" shall mean these chapter 11 cases of the Debtors pending before the Court and assigned Case Nos. 18-18833-MAM and 18-18834-MAM.

1.14    "Cash" shall mean legal tender of the United States or its equivalents, including but not limited to bank deposits, checks and other similar items.

1.15    "Causes of Action" shall mean any and all actions, suits, claims for relief, causes of action, chapter 5 causes of action, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising prior to or after the Petition Date, and expressly including any defenses or equitable remedies necessary for the adjudication of such Causes of Action.

1.16    "Claim" shall have the meaning provided for such term in section 101(5) of the Bankruptcy Code.

1.17    "Class" shall mean a group of Claims or Equity Interests described in Article III of this Plan.

1.18    "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.19    "Confirmation Order" shall mean a Final Order of the Bankruptcy Court confirming the provisions of this Plan, pursuant to section 1129 of the Bankruptcy Code.

1.20    "Confirmation Hearing" shall mean the hearing at which the Court confirms the Plan.

1.21    "Court" shall mean the United States Bankruptcy Court for the Southern District of Florida, or any other court exercising competent jurisdiction over the Case or any proceeding therein.

1.22    "Debtors" shall mean Okana, LLC and Sunglass Trader, Inc., the Debtors in Possession in these Chapter 11 bankruptcy proceedings currently pending in the United States Bankruptcy Court for the Southern District of Florida, Case Nos. 18-18833-MAM and 18-18834-MAM, respectively.

1.23    "Disbursing Agent" shall mean the person appointed under the Plan to administer and disburse the cash payments to be made pursuant to paragraph 5.4 of the Plan. The Disbursing Agent shall be Gregory A. Sarkin

1.24    "Disclosure Statement" shall mean the Joint Disclosure Statement that relates to this Plan, and as approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.25    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtors' Schedules filed in connection with the Chapter 11 case of the Debtors, or any claim against which an objection to the allowance thereof has been, or will be, interposed,

and as to which no Final Order has been entered.

1.26    "Distribution" shall mean the distribution of Cash or other property, as the case may be, in accordance with this Plan.

1.27    "Distribution Address" shall mean the address for a holder of an Allowed Claim as set forth in a proof of claim, an amended or supplemented. If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtors' Schedules.

1.28    "Effective Date" shall mean the fifteenth day following the Confirmation Date, and in the event that such date is not a Business Day, the next day thereafter.

1.29    "Equity Interest" shall mean an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtors.

1.30    "Final Order" shall mean an order of judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in case before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.31    "Impaired" shall mean an Allowed Claim that is Impaired within the meaning of section 1124 of the Code.

1.32    "Liquidated Debtor" shall mean the Debtor, Sunglass Trader, Inc., post-

confirmation.

1.33    "Okana" shall mean Okana, LLC d/b/a Abaco and Abaco Polarized.

1.34    "Petition Date" shall mean July 20, 2018, which is the date the Debtors filed their voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

1.35    "Plan" shall mean this joint plan in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

1.36    "POC" shall mean proof of claim.

1.37    "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

1.38    "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.39    "Rejection Claim" shall mean a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under section 365 of the Bankruptcy Code, or under this Plan, of an executory contract or unexpired lease of the Debtors that have not been assumed.

1.40    "Reorganized Debtor" shall mean Debtor, Okana, LLC, post-confirmation.

1.41    "Schedules" or "Amended Schedules" shall mean the schedules and any amended schedules of assets and liabilities filed or which may be filed by the Debtors with the Court in this case.

1.42    "Secured Claim" shall mean a Claim that is (a) secured by a valid and perfected lien on property in which a Debtors' Estate has an interest, but only to the extent of the value of the Claimant's interest in the applicable Estate's interest in such property as determined pursuant

to Section 506(a) of the Bankruptcy Code or (b) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to setoff, as determined pursuant to section 553 of the Bankruptcy Code.

1.43    "Sunglass Trader" shall mean Sunglass Trader, Inc.

1.44    "United States Trustee" shall mean the Assistant United States Trustee for the Southern District of Florida.

1.45    "Unsecured Claim" shall mean any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.1 An Allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that Class, and is in a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

**ARTICLE III**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

3.1 General. Unless otherwise specified, all payments under this Plan shall be paid on the first of the month following the Effective Date, which will be the fifteenth day following the date on which the Bankruptcy Court enters a Final Order of confirmation on its docket, and in the event that such date is a Saturday, Sunday, or legal holiday, the next day thereafter.

3.2 Administrative Claims. All Allowed Administrative Claims shall be paid (a) in full on the Effective Date or, if such expense is objected to, the date of a Final Order allowing any such administrative claim, whichever is later; or (b) upon such other terms as may be agreed to between the Debtors and each such administrative claimant.

An Administrative Claim is "allowed" if, at a minimum, a claimant/creditor requests

payment by the Administrative Claims Bar Date (defined below), with the exception of (a) Debtors' counsel and other estate professionals, who shall final a Fee Application by the deadline set by the Court, approximately 21 days before the plan confirmation hearing; (b) the Office of the U.S. Trustee; and (c) the clerk of the Bankruptcy Court. All administrative expenses are subject to Court approval.

Prepetition, Debtor's counsel was provided with a $25,000 retainer from Sunglass Trader and a $15,000 retainer from Okana. The Debtor estimates that a total of $5,500 will be due at confirmation, which shall be paid in 6 equal monthly installments of $917 commencing on the Initial Payment date.

**ADMINISTRATIVE CLAIMS BAR DATE**: All requests for payment of Administrative Claims, other than with respect to applications for payment of professional fees and other than U.S. Trustee and court fees, shall be filed with the Court and served upon the Debtors at least **three days before the Confirmation Hearing**, or by such earlier deadline as may apply to such Administrative Claim pursuant to an earlier order of the Court. Except as provided herein, any Administrative Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred.

3.3 All fees due under 11 U.S.C. §1129(a)(12) shall be paid as required by 28 U.S.C. §1930.

3.4 Priority Tax Claims. Priority tax claims are assessed, unsecured income, employment, and other taxes as described by Section 507(a)(8) of the Bankruptcy Code. The Debtors estimate the Allowed Priority Tax Claims total $145.57, which is the tax claim against Sunglass Trader. *See* POC 1-1 filed by the Internal Revenue Service in Sunglass Trader's Case. The Debtors estimate there are no tax claims against Okana. See POC 1-3 filed by the Internal Revenue Service in Okana's Case. Debtor Sunglass Trader shall pay this amount in full no later than the Effective

Date.

3.5 <u>Classification of Claims</u>.

**<u>Class 1 – Allowed Secured Claim of Bank United as it relates to Installment Loan</u>**

(a)    <u>Description</u>: Class 1 consists of the Allowed Secured Claim of Bank United based on an installment loan. Prior to the Petition Date, on or about August 27, 2015, Bank United loaned Sunglass Trader the sum of $450,000, as reflected by the Bank United Promissory Note. In connection with said note, Sunglass Trader executed and delivered to Bank United, a Commercial Security Agreement which granted Bank United a security interest in all inventory, chattel paper, accounts, equipment and general intangibles of Sunglass Trader. On August 10, 2018, Bank United filed its Proof of Claim [Claim 2-1] against Sunglass Trader in the amount of $378,929.55.

(b)    <u>Treatment</u>: Bank United's Allowed Secured Claim shall be paid pursuant to the terms of the Bank United Settlement entered into between the Debtors and Bank United. Bank United's secured claim shall be valued at Twenty-Eight Thousand Eight Hundred Dollars ($28,800) and payable in: (a) equal, consecutive monthly payments of Four Hundred Fifty Dollars ($450) for the two (2) year period commencing on December 10, 2018, and continuing on the 10th day of each subsequent month through and including November 10, 2020; and (b) equal, consecutive monthly payments of Seven Hundred Fifty Dollars ($750) for the two (2) year period commencing on December 10, 2020, and continuing on the 10th day of each subsequent month through and including November 10, 2022. Okana and Sunglass Trader will be jointly and severally liable on the obligation that shall be memorialized in the form of a new note[1].

(c)    <u>Impairment</u>: The Class 1 Claim is Impaired and the Class 1 Claimholder is entitled

---

[1] Though the obligor of this debt is Sunglass Trader, Debtor Okana has agreed to accept joint liability to settle any allegations of BankUnited, which the Debtors deny, that the inventory of Sunglass Trader has been previously sold for the benefit of Okana.

to vote to accept or reject the Plan.

## Class 2 – Allowed Secured Claim of Shopify as it relates to Receivables

(a)    Description: Class 1 consists of the Allowed Secured Claim of Shopify based on a merchant cash advance in the original amount of $30,000.00, secured by Okana's receivables.

(b)    Treatment: The original contract between Okana and Shopify shall remain unmodified in that 15% of Okana's receivables go towards payment of this claim. The current balance, as of April 26, 2019, is approximately $3,557.00.

(c)    Impairment: The Class 2 Claim is Unimpaired and therefore is conclusively presumed to have accepted the Plan.

## Class 3 – Allowed General Unsecured Claims of Sunglass Trader

(a)    Description: Class 3 consists of the Allowed Claims of the general unsecured creditors of Sunglass Trader. A list of general unsecured creditors attached as **Exhibit "A"** to the Disclosure Statement.

(b)    Treatment: Holders of Allowed general unsecured claims of Sunglass Trader shall not share in a Distribution as Debtor Sunglass Trader is liquidating and BankUnited's blanket lien [Class 1] exceeds the value of Sunglass Trader's assets by over $300,000.00.

(c)    Impairment: The Class 3 Claims are Impaired and any of the Class 3 Claimholders are entitled to vote to accept or reject the Plan.

## Class 4 – Allowed General Unsecured Claims of Okana:

(a)    Description: Class 4 consists of the Allowed Claims of the general unsecured creditors of Okana. As reflected in the list of general unsecured creditors attached as **Exhibit "A"** to the Disclosure Statement, there are only two unsecured claims, one is the deficiency claim of

10

BankUnited and the other is the claim of the principal, Gregory Sarkin, for a personal loan to the company. The aggregate amount of Class 4 general unsecured claims against Okana totals $350,129.55.

(b)     <u>Treatment</u>: Holders of Allowed Class 4 general unsecured claims shall not receive a distribution, as BankUnited's claim is being treated as set forth in Class 1 and Gregory Sarkin is waiving his right to repayment of his loan.

(c)     <u>Impairment</u>: The Class 4 Claims are Impaired and any of the Class 4 Claimholders are entitled to vote to accept or reject the Plan.

**<u>Class 5 –Equity Interest of Sunglass Trader</u>:**

(a)     <u>Description</u>: Class 5 consists of the Equity Interests of Debtor Sunglass Trader held by Gregory Sarkin. All property of the Estate will re-vest in Reorganized Debtor Sunglass Trader. Gregory Sarkin shall retain all ownership interests in the Debtor.

(b)     <u>Impairment</u>: Class 5 is Unimpaired and therefore is conclusively presumed to have accepted the Plan.

**<u>Class 6 –Equity Interests of Okana</u>:**

(a)     <u>Description</u>:  Class 6 consists of the Equity Interests of Debtor Okana held by Gregory Sarkin. All property of the Estate will re-vest in Reorganized Debtor Okana. Gregory Sarkin shall retain all ownership interests in the Debtor.

(b)     <u>Impairment</u>: Class 6 is Unimpaired and therefore is conclusively presumed to have accepted the Plan.

**ARTICLE IV**
**<u>IMPAIRMENT</u>**

Classes 1, 3, and 4 are Impaired under this Plan. Impaired classes will be treated as fully

set forth in Article III above.

## ARTICLE V
### MEANS OF EXECUTION AND SECURITY FOR PAYMENTS

5.1 All payments as provided for in the Debtors' Plan shall be funded by Okana's Cash on Hand and operating income, unless otherwise stated.

5.2 Gregory A. Sarkin is named as the disbursing agent responsible for making the payments under the Plan (the "Disbursing Agent"). The payments shall be made as provided in Article III.

## ARTICLE VI
### EXECUTORY CONTRACTS

Any and all executory contracts and unexpired leases of the Debtors not expressly assumed herein or assumed prior to the Confirmation Date, or are not as of the Confirmation Date the subject of a pending application to assume, shall be deemed to be rejected. Okana has rejected the following leases:

| Description of Lease or Contract | Name and Address of Other Party | Date Lease or Contract Expires |
|---|---|---|
| Kiosk in mall. | Palm Beach Outlets I, LLC 1751 Palm Beach Lakes Blvd. Suite E121 West Palm Beach, FL 33401 | Expired December 31, 2018 |
| 2016 Chevrolet Suburban | GM Financial PO Box 1181145 Arlington, TX 76096 | Expired February, 2019 |

Sunglass Trader will assume the following lease and assign it to Okana:

| Description of Lease or Contract | Name and Address of Other Party | Date Lease or Contract Expires |
|---|---|---|
| Office space | Arbil Inc., 355 Hiatt Dr., Ste C, Palm Beach Gardens, FL 33418 | April 2023 |

**ARTICLE VII**
**DUTIES AND FEES OWED TO THE OFFICE OF THE U.S. TRUSTEE**

With respect to pre-confirmation periods, the Debtors are required to pay the appropriate sums required pursuant to Section 1930(a)(6) within ten days of the entry of the order confirming the Plan. The Debtors must also file all monthly operating reports for the relevant periods indicating the Cash disbursements for the relevant period.

With respect to post-confirmation periods, the Reorganized Debtor and Liquidated Debtor will pay the United States Trustee fee for post-confirmation periods based upon all post-confirmation disbursements made by the Debtors. The Debtors will also file all post-confirmation quarterly operating reports with the Court until the earlier of the closing of this case or upon dismissal or conversion of this case.

**ARTICLE VIII**
**EFFECT OF CONFIRMATION**

Binding Effect. The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims and Equity Interests, and their respective successors and assigns.

Compromise and Settlement. Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class with due regard to any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code, or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled and compromised pursuant to the Plan. The Confirmation Order will constitute the Court's finding and

13

determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates and all holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Court pursuant to Bankruptcy Rule 9019.

No Discharge of Debtor Sunglass Trader. Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan will not discharge Claims against the Debtor Sunglass Trader; provided, however, that no holder of any Claim or Equity Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against, any of the Estate, the Disbursing Agent, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

Discharge of Debtor Okana. On the confirmation date of the Plan, Debtor Okana will be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code, except that Debtor Okana will not be discharged of any debt: (i) imposed by the Plan; (ii) of a kind specified in Section 1141(d)(6)(A) of the Bankruptcy Code; or (iii) of a kind specified in Section 1141(d)(6)(B) of the Bankruptcy Code.

Final Decree as to Debtors. Upon substantial consummation of the Plan, the Debtors, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## ARTICLE IX
### POST-CONFIRMATION DEBTORS' STRUCTURE

The Debtors shall continue to exist after the Effective Date with all assets re-vesting in the Debtors and with all powers of limited liability companies and corporations under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by

14

merger or otherwise) under Florida law. Following the Effective Date, the Debtors shall be free to operate and perform any and all acts authorized by its Operating Agreements without further order from the Court, subject only to the terms of the Plan and Confirmation Order.

Upon the Effective Date, the Debtor's management shall remain unchanged, in that Gregory A. Sarkin will continue to act as president of Sunglass Trader for the purpose of administratively dissolving Sunglass Trader, and he will continue to act as president of Okana for the purpose of continuing to operate the business of Okana.

Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date, the property of the Debtors shall be free and clear of all claims and interests of creditors, except as otherwise provided for herein.

Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date, the Liquidated Debtor, Sunglass Trader, may take all actions necessary to wind down the affairs of Sunglass Trader without further supervision of the Court, subject to the terms and conditions of this Plan and subject to Fl. Stat. 607.1405.

The Liquidated Debtor, Sunglass Trader, shall be administratively dissolved after the later of (a) the Effective Date or (b) upon performing all actions necessary to wind down their businesses and administrate the liquidated assets, including those actions enumerated in Fl. Stat. 607.1405.

## ARTICLE X
## CRAM DOWN AND MODIFICATION

### Utilization of "Cram Down"

If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8) are found to have been met with respect to the Plan, the Debtors may seek confirmation pursuant to 11 U.S.C. §1129(b). For the purposes of seeking confirmation under the "cram down" provisions of the Bankruptcy Code, should that alternative means of confirmation prove to be necessary, the Debtors

reserve the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with Section 1129(b) of the Bankruptcy Code.

Modification of Plan

The Debtors may propose amendments to or modifications of this Plan at any time prior to the Confirmation Date with the leave of Court upon notice to parties entitled to receive the same. After confirmation, the Debtors may, with the approval of this Court, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

The Debtors may modify the Plan at any time after the Confirmation Date and before substantial consummation of the Plan, but may not modify such plan so that such plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.

Any holder of an Allowed claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

The Plan may be modified at any time after the Confirmation Date but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the Debtors, the United States trustee, or the holder of an allowed unsecured claim, to (a) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (b) extend or reduce the time period for such payments; or (c) alter the amount of the Distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the Plan.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

11.1 From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the liquidated case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or any controversy as to the classification of Claims;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code;

(c) to enable the Debtors to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other Federal, State or local laws; including Causes of Action, controversies, disputes, and conflicts between the Debtors and any other party, including but not limited to any Causes of Action for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any order assuring that good, sufficient and marketable legal title is conveyed to the purchaser of the Debtors' property;

(d) to consider any necessary valuation issues under Section 506 of the Bankruptcy Code, and any proceeding to determine the amount, validity and priority of liens, in connection with the Debtors' property;

(e) to determine the rights of any party in respect of the assumption or rejection of any executory contracts or unexpired leases;

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan;

(g) to modify this Plan after the Confirmation Date, pursuant to the Bankruptcy Code;

(h) to enforce and interpret the terms and conditions of this Plan;

(i) to enter orders to enforce the title, rights and power of the estate as the Court may deem necessary; and

(j) to enter orders concluding and closing this case.

## ARTICLE XII
### MISCELLANEOUS

12.1 <u>Allowed and Disallowed Claims</u>. Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for Distribution, shall not be paid in accordance with the provisions of the Plan until such claim has become an allowed claim by a Final Order. If allowed, the claim shall be paid on the same terms as if there had been no dispute.

12.2 <u>Headings</u>. Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

12.3 <u>Defects, Omissions and Amendments</u>. This Plan may be altered, amended or modified by the Debtors before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code and as set forth in Article X herein and Article X of the Disclosure Statement.

12.4 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or Florida Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

12.5 <u>Severability</u>. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

12.6 <u>Regulatory Approval</u>. No regulatory approval is necessary for the confirmation of this Plan.

This Joint Plan is respectfully submitted:

        OKANA, LLC
        DEBTOR IN POSSESSION

        BY: _____
              GREGORY A. SARKIN, PRESIDENT


        SUNGLASS TRADER, INC.
        DEBTOR IN POSSESSION

        BY: _____
              GREGORY A. SARKIN, PRESIDENT


           Furr & Cohen, P.A.
           *Attorneys for the Debtors*
           2255 Glades Road, Suite 301E
           Boca Raton, FL 33431
           561-395-0500

           By: */s/ Aaron A. Wernick*
               Aaron A. Wernick, Esq.
               Florida Bar No. 14059
               awernick@furrcohen.com

This Joint Plan is respectfully submitted:

OKANA, LLC
DEBTOR IN POSSESSION

BY: _____
        GREGORY A. SARKIN, PRESIDENT


SUNGLASS TRADER, INC.
DEBTOR IN POSSESSION

BY: _____
        GREGORY A. SARKIN, PRESIDENT


Furr & Cohen, P.A.
*Attorneys for the Debtors*
2255 Glades Road, Suite 301E
Boca Raton, FL 33431
561-395-0500

By: /s/ *Aaron A. Wernick*
        Aaron A. Wernick, Esq.
        Florida Bar No. 14059
        awernick@furrcohen.com

20